IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **JIMMY LEE SELF,** )<br>)<br>Plaintiff )<br>)<br>) | Civil Action No.:<br>6:12-CV-00846-AKK |
| v. )<br>) | |
| **CAROLYN W. COLVIN,** )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | |

# MEMORANDUM OPINION

Jimmy Lee Self brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court has reviewed the Administrative Law Judge's (ALJ) decision, which has become the final decision of the Commissioner. For the reasons stated below, specifically the ALJ's failure to discuss the Listing 12.05 requirements, the ALJ's decision is **REMANDED** for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

On September 17, 2007, Self applied for disability insurance benefits and Supplemental Security Income under Title II and Title XVI of the Act. Self originally alleged disability beginning on November 15, 2002 because of a back

1

injury, depression and mental retardation.  The Commissioner denied the claims initially and on reconsideration.  (R. 13, 97).  Self filed a timely request for a hearing before an Administrative Law Judge, which the ALJ held on September 18, 2009.  (R. 411).  At the hearing, Self amended his alleged onset date to September 20, 2006.  (R. 77).  As a result, the ALJ ordered that Self undergo two consultative examinations to supplement the record.  (R. 428–29).  Thereafter, ALJ held a supplemental hearing on March 4, 2010, (R. 432), during which Self amended his alleged onset date to September 17, 2007.  (R. 79).  Because Self was last insured on September 30, 2006, he abandoned his claim for disability insurance benefits.  (R. 435).

Self has a sixth grade education and was thirty-nine at the time of the second administrative hearing. (R. 439, 437). His past work experience includes employment as a warehouse worker, furniture assembler, mobile home assembler, and dry wall installer helper.  (R. 25).  Self originally alleged disability due to back pain and depression.  (R. 97).  However, at the second administrative hearing, Self further alleged disability because of mental retardation under the listing in § 12.05(C).  (R. 436).

In a decision dated April 2, 2010, the ALJ found that Self was not disabled as defined by the Social Security Act, and thus was ineligible for Supplemental Security Income. (R. 27).  On January 13, 2012, the Appeals Council denied Self's

request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 5–7). Self has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court **REVERSES** and **REMANDS** the decision of the Commissioner.

## II. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). However, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)–(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)–(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. DISCUSSION

The court turns now to Self's contention that the ALJ erred by applying the incorrect legal standard when determining that Self did not meet the requirements of § 12.05(C) in the Listing of Impairments.[1] To qualify as a disability under §

---

[1] Self also challenges the ALJ's findings regarding his back ailments. Specifically, Self contends that the ALJ erred in discrediting the opinion of treating physician Dr. David A. Justice that Self's back condition rendered him permanently disabled. As it relates to Self's back impairments, the record shows that on April 21, 2000, after conducting an MRI of Self's lumbar spine, Dr. Roger A. Ray reported that Self has a "rather large herniated disc at L5." (R. 146) Shortly thereafter, on May 1, 2000, Dr. Ray also reported that an MRI of Self's cervical spine looked "satisfactory." (R. 145). On May 10, 2000, Self underwent a lumbar microdiscectomy. *Id*. At Self's request, Dr. Ray released him to full work without restrictions on July 12, 2000. (R. 142). On October 18, 2006, Self went to physical therapy for back pain and reported that the pain was a two on a one-to-ten scale after the therapy. (R. 155).

12.05(C), the plaintiff's condition must "satisf[y] the diagnostic description in the introductory paragraph [of § 12.05]." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00(A) (1992). The introductory paragraph requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05 (1992). Then, the plaintiff must demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05(C).

Here, the record shows that in February of 1986, when Self was fifteen, Barney R. Bell performed a psychological assessment of Self for the Marion County School System. Self obtained a verbal score of 73, a performance score of 88 and a full scale intelligence quotient of 79. Based on the results, Mr. Bell opined

---

Thereafter, on May 25, 2007, Self went to the Northwest Medical Center with lower back pain. Self was prescribed Oxycontin and Flexeril. (R. 175-77). On September 12, 2007, Self was treated for an overdose of Seroquel. (R. 186). On December 12, 2007, Dr. George A. Evans performed a consultative examination of Self and diagnosed him with back pain with radiation to his lower legs and depression. (R. 232). Dr. Chaketa Guinn performed a Physical Residual Functional Capacity Assessment on January 24, 2008. She concluded that Self's alleged limitations were only partially credible because the objective findings indicated only a moderate impairment. (R. 272).

Relevant to Self's contentions regarding the ALJ, between February 2006 and April 2009, Dr. Justice treated Self for his back pain with regular check-ups and prescription refills. (R. 275–354). Critically, although records associated with Dr. Justice's treatment indicate Self reported severe back pain, for which Dr. Justice prescribed medication, including oxycontin and Flexeril, *see e.g.*, (R. 337), they do not contain sufficient medical evidence to support the conclusion that Self suffered from a debilitating condition. Nonetheless, on May 30, 2008, Dr. Justice reported to the Alabama Food Stamp Program that Self was physically unable to work and that the condition was likely permanent. (R. 298). Based on the record as a whole, which does not support Dr. Justice's contentions, the court finds that the ALJ correctly discredited Dr. Justice's opinion. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (stating that "good cause" exists for disregarding a treating physician's opinion when the "treating physician's opinion was not bolstered by the evidence").

6

that Self functioned in the dull normal range and recommended that Marion County place Self in regular classes. (R. 374–75).

The next reference to Self's mental state occurred after Self's September 12, 2007 overdose, when Dr. Marianna Barnes diagnosed Self with major depression. (R. 202). On December 5, 2007, Dr. Charles E. Houston, Jr. also diagnosed Self with depression, and further stated that Self likely functioned in the borderline intellectual range because he only completed the seventh grade[2] and was in three special education classes. Dr. Houston opined that Self's activities were moderately restricted and that he was "somewhat capable of independent functioning." (R. 245–48). Almost a month later, Dr. Aileen McAlister performed a Psychiatric Review and also concluded that Self functioned in the borderline intellectual range. (R. 261). The final entry related to Self's mental state occurred on October 27, 2009, when Dr. John R. Haney performed a consultative examination, which revealed that Self had a full scale IQ score of 64, a verbal scale score of 66, and a performance scale score of 69. Based on these findings, Dr. Haney diagnosed Self with mild mental retardation. (R. 355–57).

In finding the Self was not disabled, first, the ALJ found that Self had not engaged in any substantial gainful activity since the alleged onset of his disability. Next, he found that Self suffered the following severe impairments: degenerative

---

[2] While Dr. Houston stated that Self had completed the seventh grade, Self testified he had only completed the sixth. (R. 419).

disc disease, chronic back pain radiating to the left leg, depression, a learning disorder, borderline intellectual functioning, and substance abuse in remission. (R. 16). The ALJ determined that none of these conditions manifested the specific signs and diagnostic findings required by the Listing of Impairments. However, the ALJ did not mention the requirements of the § 12.05(C) listing. Instead, the ALJ merely cited Self's high school IQ test and Mr. Bell's recommendation that Self continue in regular classes. (R. 21).

Next, the ALJ found that Self had the RFC to perform light work and further limited him to lifting no more than twenty pounds, sitting for only two hours at a time, standing for only one hour at a time, and walking for only thirty minutes at a time. He also stated Self had a moderate ability to understand and execute simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, and to react to workplace changes. He determined that Self had marked limitations in his ability to understand and execute complex instructions and make judgments on complex work-related decisions. (R. 22).

In making this finding, the ALJ found that Self's testimony was not credible to the extent it differed with his RFC determination. The ALJ cited inconsistencies in Self's prior statements, gaps in treatment, and the objective medical evidence to support his credibility determination. Further, the ALJ gave little weight to the opinions of consultative examiner Dr. Haney. He cited Dr. Haney's observation

that Self gave up on the more difficult test items. Based on these findings and the vocational expert's testimony, the ALJ determined that Self could not perform any past relevant work but could perform jobs that exist in significant number in the national economy. Thus, the ALJ determined that Self was not disabled under the Act. (R. 24–26).

After careful review, the court concludes that the ALJ applied the incorrect legal standards. To be considered disabled under § 12.05(C), Self must meet the introductory paragraph's definition of mental retardation, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A) (1992), which requires that "a plaintiff must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Evidence of a deficit in adaptive behavior after age twenty-two creates a rebuttable presumption that Self "manifested a mental disability prior to age twenty-two." *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

Next, assuming a claimant meets the introductory requirement, he must then demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05(C). The Eleventh Circuit has held that the ALJ can properly "consider[] … multiple IQ

scores generated by different test administrations." *Wilbon v. Comm'r of Soc. Sec.*, 181 F. App'x 826, 829 (11th Cir. 2006).

However, the regulations for determining disability in children provide that "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 112.00(D)(10) (1992). Courts have applied this standard in adult disability cases and determined that a non-current IQ test is not a valid indication of a plaintiff's IQ. *See Stutts v. Astrue*, 489 F. Supp. 2d 1291, 1293 (N.D. Ala. 2007) ("Because these IQ scores were achieved before the plaintiff reached the age of 16, they are not deemed to be valid as to the plaintiff's current level of intellectual functioning."); *Lewis v. Astrue*, CIV.A. 08-0583-CB-M, 2009 WL 1904319, at *3 (S.D. Ala. July 1, 2009) (affirming the Commissioner's decision not to rely on a non-current IQ test).

In finding that Self did not meet a listed impairment, the ALJ did not discuss the § 12.05(C) requirements, either those in § 12.05(C) itself or in the introductory paragraph. Rather, he merely cited Self's 1986 IQ test and the examiner's statements. He neither mentioned nor discussed Self's 2009 IQ test. Because Self was only fifteen at the time of the 1986 test, the 1986 IQ test is not a current measure of Self's intellectual abilities. *See Stutts*, 489 F. Supp. 2d at 1293. Thus, the ALJ erred by relying solely on an invalid IQ test in his § 12.05(C) finding.

In reaching this conclusion, the court notes that the ALJ did mention and briefly discuss the 2009 IQ test when discrediting Dr. Haney's opinion. (R. 24, 25). In fact, throughout the opinion, the ALJ also cited facts that might have been used to find Self did not meet the § 12.05(C) requirements, notwithstanding the 2009 IQ test results.  *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on Self's daily activities and behavior."). Although these facts, if fully analyzed, may well support a similar determination by the ALJ on remand, the current record does not permit the court to reach such a conclusion. As the Eleventh Circuit has made clear, this court will not "affirm simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Therefore, on remand, the ALJ should apply the proper legal standard in determining whether Self's mental disability meets the requirements of § 12.05(C).

## VII. CONCLUSION

For the reasons stated above, this court concludes that the ALJ did not apply the correct legal standard in assessing whether Self's condition meets the requirements of § 12.05(C). Therefore, the Commissioner's decision is to be

**REVERSED** and **REMANDED**. The court will enter a separate order to that effect simultaneously.

**DONE** this the 4th day of February 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE